**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**JANICE BENNETT** **CIVIL ACTION**

**VERSUS** **NO. 13-6364-SS**

**WAL-MART STORES, INC., et al**

**ORDER AND REASONS**

Defendants, Wal-Mart Stores, Inc. ("Wal-Mart") and Mike Nowell ("Nowell"), filed a motion for summary judgment.

**BACKGROUND**

Janice Bennett ("Bennett"), plaintiff, was hired by Sam's Club in March 2000. She transferred to Wal-Mart as an assistant Manager at a store in Kenner, Louisiana, in June 2005. She transferred to a store in Metairie in June 2009. In October 2009, she transferred to a store in LaPlace.[1] Prior to her transfer to LaPlace, she accepted a pay reduction because she moved from a "metro" store to a "non-metro" store, which had a lower pay scale."[2]

On September 27, 2010, Bennett completed a charge of discrimination for the EEOC. Rec. doc. 18 (Exhibit P). The letter "x" appears in the retaliation and disability boxes. No other basis for discrimination is indicated. The charge states that discrimination began April 1, 2010 (about six months after the transfer to LaPlace) with the latest act on September 2, 2010.

On November 8, 2010, Bennett began a leave of absence for follow-up surgery to address complications from surgery performed in 2008.[3] On July 10, 2013, the EEOC issued a notice of

[1] Undisputed Fact No. 1. The statement of undisputed facts is attached to Defendants' motion (Rec. doc. 18).
[2] Undisputed Fact No. 2.
[3] Undisputed Fact No. 15.

right to sue. Rec. doc. 18 (Exhibit R). In November 2013, Bennett resigned from Wal-Mart. She was on leave from November 8, 2010 through her resignation three years later.[4]

On October 8, 2013, Bennett filed a petition in state court against Wal-Mart and Nowell. She alleged that: (1) she is black; (2) she was subjected to and witnessed a racially hostile work environment in which (a) she was moved from store to store; and (b) she was not allowed to use vacation days and sick days; (3) Wal-Mart regularly used racial slurs, insults and innuendo toward its mostly black work force; (4) defendants failed to accommodate reasonable work restrictions in violation of the ADA; (5) defendants harassed her because she refused to discipline subordinates for unjust reasons; (6) defendants threatened her job when she asked for vacation and sick leave for medical conditions caused by the hostile work environment; (7) defendants racially harassed and discriminated against her when she complained of unreasonable management practices and failure to follow company procedures; (8) defendants singled out black persons for harassment and abuse more than persons of other ethnic backgrounds; (9) she suffered discrimination on account of her race, sex and national origin; (10) the harassment started at the time of her employment and continued until she took a leave of absence for medical conditions arising from her employment; (11) she suffered intentional infliction of emotional distress; (12) on September 27, 2010, she filed a complaint with the EEOC; and (13) she received a right to sue letter from the EEOC. Rec. doc. 1 (Attachment).

Bennett alleges claims under: (1) Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 2000e; (2) Americans with Disabilities, 42 U.S.C. 12101 et seq.; (3) La. R.S. 23:302 et seq.; and (4) La. R.S. 23:332(A)(1). She seeks attorneys' fees and punitive damages. She contends that her claims are continuing and relate back to the earliest date of discrimination. Rec. doc. 1 (Attachment).

[4] Undisputed Fact No. 20.

On November 7, 2013, defendants removed the petition to federal court. Rec. doc. 1. The parties consented to proceed before the assigned Magistrate Judge. Rec. doc. 9. The pretrial conference is set for April 7, 2015. A bench trial is set for April 21, 2015. Rec. doc. 11.

On January 27, 2015, defendants filed their motion for summary judgment and noticed it for February 11, 2015. Rec. doc. 18. Bennett's opposition was due on February 3, 2015. On that day, she filed a motion for extension. Rec. doc. 19. The motion for summary judgment was reset for February 25, 2015. Bennett's opposition was due on February 18, 2015. Rec. doc. 21.

On February 18, 2015, Bennett filed an opposition including a statement of eight undisputed facts. Rec. doc. 22 at 1-2. The Clerk marked the opposition as deficient for failure to comply with L.R. 56.2. On February 20, 2015, Bennett filed a revised opposition and the Court issued an order regarding compliance with L.R. 56.2 Rec. docs. 23 and 24.

Bennett's revised opposition is identical to the February 18, 2015 opposition except that there is a separate "Statement of Undisputed Facts." These are the same undisputed facts found at pages 1 and 2 of her original opposition. Rec. docs. 22 and 23. Pursuant to the February 20, 2015 order, Bennett was given until February 26, 2015 to file a statement that complied fully with Local Rule 56.2.

> Any opposition to a motion for summary judgment must include a separate and concise statement of the material facts which the opponent contends present a genuine issue. All material facts in the moving party's statement will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement.

Id. (emphasis added).

Bennett did not comply with the Court's order of February 20, 2015 and file, in conformity with Local Rule 56.2, a statement of the material facts which she contends present a

genuine issue. Defendants' statement of undisputed material facts (Rec. doc. 18 [Attachment]) is deemed admitted.

Defendants filed a reply on February 27, 2015. Rec. doc. 25. The motion for summary judgment was submitted on briefs and without oral argument on March 2, 2015.

**FED R. CIV. P. 56(d)**

Bennett states:

> Discovery in this case is not complete. Plaintiff desires to take the deposition of Wal-Mart representatives regarding Michael Nowell's employment and Wal-Mart policies regarding race, sex and ADA discrimination protocols and procedures.

Rec. doc. 22 at 1. Bennett reports that she contacted defendants to depose two representatives of Wal-Mart. She only reports the depositions "have yet to be scheduled." Rec. doc. 22 at 4.

Defendants filed their answer on November 26, 2013. Rec. doc. 8. The May 22, 2014 scheduling order set the discovery deadline for February 6, 2015. Rec. doc. 11. Defendants filed their motion for summary judgment on February 4, 2015 within the deadline for filing such motions. Id. Bennett has not demonstrated any basis for concluding that she was not afforded sufficient opportunity to obtain discovery from Wal-Mart.

Once a motion for summary judgment is filed, the non-moving party (Bennett) must show that a genuine and material factual dispute exists to defeat summary judgment.

> If the non-moving party is still conducting valuable discovery or for some other reason is not yet ready or able to make that showing, the party may file an affidavit . . . explaining why a ruling on summary judgment should be postponed.

Baicker-McKee, Janssen and Corr, Federal Civil Rules Handbook, Rule 56(d) at 1118 (2011). Generally, the non-moving party must present: (1) a description of the discovery sought; (2) an explanation for how the discovery will preclude the entry of summary judgment; and (3) a statement justifying why it was not or could not have been obtained earlier. Id. Even if Bennett

is given the benefit of the doubt on the third requirement, she has not provided a description of the discovery sought or an explanation of how it will preclude summary judgment.

Bennett's request for a delay in the resolution of defendants' motion for summary judgment is denied.

**SUMMARY JUDGMENT STANDARD**

Fed. R. Civ. P. 56 provides in pertinent part that summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990). To that end, the court must "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Wyatt v. Hunt Plywood, 297 F.3d 405, 409 (5th Cir. 2002). Where the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); and Washington v. Allstate Ins. Co., 901 F.2d 1281 (5th Cir. 1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case. Celotex, 106 S.Ct. at 2553; see Lujan, 110 S. Ct. at 3187. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 106 S.Ct. at 2553-54. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return

a verdict for the non-moving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001).

This burden is not satisfied with "some metaphysical doubt as to the material facts," Matsushita, 106 S.Ct. at 1356, by "conclusory allegations," Lujan, 110 S. Ct. at 3180, or by only a "scintilla" of evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir.1994). The court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. See Lujan, 110 S. Ct. at 3188. Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted. See Evans v. City of Bishop, 238 F.3d 586, 588-89 (5th Cir. 2000).

**PRESCRIPTION**

Defendants contend that Bennett's state law claims, including her claim for intentional infliction of emotional distress are prescribed. Rec. doc. 18 at 24. Bennett's memoranda do not respond to defendants' argument that the state law claims are prescribed. Rec. docs. 22 and 23. The motion for summary judgment as to the state law claims and claim for intentional infliction of emotional distress is unopposed and it has merit.

> A cause of action under (the state antidiscrimination law) is a tort and is thus governed by Louisiana's one year statute of limitations. . . . Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. The appellant filed her suit within one year of her discharge but not within one year of notification that she would be discharged. Thus this case turns on whether the prescriptive period begins to run at notification or at discharge. . .

Williams v. Conoco, Inc., 860 F.2d 1306, 1307 (5th Cir 1988) (citations, quotation marks and brackets omitted). The prescriptive period begins to run at the date of notification. Id.; and Jay v. International Salt Co., 868 F.2d 179, 180 (5th Cir. 1989) (applicable statute of limitations for age discrimination claim under Louisiana law is one year). Louisiana law provides that the one year prescriptive period shall be suspended during the pendency of an EEOC investigation, but the suspension shall not last longer than six months. Ringo v. Winn-Dixie Louisiana, Inc., 2004 WL 737481, *1-2 (E.D.La. 2004)(Vance, J.)(citing La. R.S. 23:303). Like the state antidiscrimination claims, a claim for intentional infliction of emotional distress is subject to the one-year prescriptive period. Pratt v. Louisiana State Medical Center in Shreveport, 953 So.2d 876, 880 (La. App. 2nd Cir. 2007).

Even after initiating an EEOC investigation, Bennett was required to file her state law claims within 18 months of notice of acts of which she complains. As they relate to the issue of whether the state law claims are time-barred, the undisputed facts are:

> 1. Plaintiff was initially hired by Sam's Club in March 2000 and transferred to Wal-Mart as an Assistant Manager . . . in June 2005. . . .[5]
>
> 9. Pursuant to Wal-Mart's Leave of Absence Policy, leaves of absence may not exceed twelve months.
>
> 10. From May 21, 2010 to July 8, 2010, plaintiff took a leave of absence for testing relating to unstable blood pressure and irregular heartbeat.
>
> 11. From September 3, 2010 to October 6, 2010, plaintiff took a leave of absence for additional testing relating to her unspecified heart condition.
>
> 15. On November 8, 2010, plaintiff began a leave of absence for follow-up surgery to address complications from a breast reduction surgery performed in 2008.
>
> 16. On December 2, 2010, plaintiff requested an extension of her leave based on her claim that she was totally unable to work because of stress.

[5] The numbers in this list correspond to numbers in the Wal-Mart's statement of undisputed material facts. Rec. doc. 18 (Attachment).

> 17. After exhausting her FMLA leave in November 2010, plaintiff began a personal leave through February 2011 and began an unpaid leave in February 2011.
>
> 20. Plaintiff did not return to work after November 8, 2010 and in November 2013, after three years on leave, plaintiff chose to resign because she was unable to work and because she felt that Wal-Mart did not try to address her concerns.
>
> 26. On September 27, 2010, plaintiff filed an EEOC Charge against Wal-Mart.
>
> On July 10, 2013, the EEOC issued it notice of right to sue. Rec. doc. 18 (Exhibit R).

The last day on which the alleged discrimination could have occurred was November 8, 2010. With the addition of the six month suspension of the prescriptive period for the EEOC investigation, Bennett's state law claims were prescribed 18 months after November 8, 2010 or on May 8, 2012. Bennett did not file her petition in state court until October 8, 2013. Rec. doc. 1 (Attachment). Bennett's state law claims and her claim for intentional infliction of emotional distress are prescribed. Defendants' motion for summary judgment is granted as to these claims.

**TITLE VII CLAIM FOR RACE, SEX OR NATIONAL ORIGIN**

On September 27, 2010, Bennett completed a charge of discrimination for the EEOC. Rec. doc. 18 (Exhibit P). The letter "x" appears in the retaliation and disability boxes. No other basis for discrimination is indicated. Bennett described the particulars of Wal-Mart's discrimination in three parts. In Part I, she reported that her salary of $54,000 was reduced to $46,000; she was subjected to different terms and conditions of employment; and she was given an unfair "Coaching for Improvement." Part II describes the basis for the "Coaching for Improvement" and reduction in pay. It states there was no explanation for the different terms and conditions of employment. Part III states:

> I believe that I have been discriminated against based under The Americans with Disabilities Act of 1990, as amended, to include The Americans with Disabilities

> Act Amendments Act of 2008 (ADAA) based on my disability and also because management regards me as having other Disabilities. I further believe that I am being retaliated against because of my disability and because management views me as having other disabilities.

Rec. doc. 18 (Exhibit P).

There is no mention in the charge of discrimination based on race, sex or national origin.

> Ordinarily, an employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not reasonably be expected to grow out of the charge of discrimination.

Filer v. Donley, 690 F.3d 643, 647 (5th Cir. 2012) (citations and quotation marks omitted). Claims based on race, sex and national origin cannot reasonably be expected to grow out of Bennett's charge of discrimination based on unspecified disabilities and retaliation based on those disabilities.

Bennett did not submit any opposition to the portion of defendants' motion for summary judgment arguing that Title VII claims for discrimination based on race, sex or national origin should be dismissed. Defendants' motion for summary judgment as to these claims is granted.

## ADA CLAIM

Defendants contend that Bennett cannot state an ADA claim against either Wal-Mart or Nowell for five reasons.

First, defendants urge that Bennett's petition with its single ADA claim for failure to accommodate her reasonable work restrictions is outside the scope of her EEOC charge which is limited to the allegation that she was unfairly coached. Rec. doc. 18 (Memorandum at 5-7). Bennett responds that she filed her EEOC charge without the assistance of counsel. Rec. doc. 22 at 1.

Second, assuming the ADA claim is within the scope of the EEOC charge or can reasonably be expected to grow out of it, defendants argue that all of Bennett's requests for

accommodations were granted. Bennett denies Wal-Mart accommodated her work restrictions, so she was forced to take a leave of absence. Rec. doc. 22 at 1. She urges that when she became ill, she required some breaks, a shorter work day for a period of time and the wearing of a heart monitor. She contends that none of these accommodations were reasonably provided. Rec. doc. 22 at 5.

Third, if Bennett's ADA claim survives the first two hurdles, defendants contend that she cannot establish by a preponderance of the evidence any of the elements required for a prima facie case. Bennett's responds that she will be able to sustain her burden of proof by reference to the medical testimony of her treating physicians, which demonstrate that Wal-Mart's hostile work environment caused her disability. Rec. doc. 22 at 4-5.

Fourth, assuming that she presents a prima facie case, defendants contend that Bennett's ADA claim is barred by her refusal to report it. Bennett urges that she tried repeatedly to avail herself of Wal-Mart's "Open Door" policy to address ADA discrimination and other issues, but was ignored. Rec. doc. 22 at 1 and 4.

Fifth, defendants argue that she cannot state a claim against Nowell individually because he is not her employer and he is not named in the EEOC charge. Rec. doc. 18 (Memorandum at 5-14). Bennett does not respond to this argument. For the reasons stated by defendants at page 14 and n. 60 of their memorandum (Rec. doc. 18[Attachment]), the motion for summary judgment as to the ADA claim against Nowell is granted.

The EEOC charge in Part II clearly demonstrates that the basis for the charge was the fact that T. Mayeux, a co-manager, gave her "coaching for improvement" because she failed to conduct timely evaluations on associates.[6] Paragraph 13 of her petition states that, "[d]efendants

---

[6] She also refers to a reduction in pay. Rec. doc. 18 (Exhibit P). It is undisputed, however, that she accepted a pay reduction in October 2009 when she moved from the store in Metairie, a metro store, to the store in LaPlace, a non-

Wal-Mart Stores, Inc. and Michael Nowell failed to accommodate work restrictions in violation of the American's with Disabilities Act." Rec. doc. 1(Attachment).

In Preston v. Texas Dept. of Family and Protective Services, 222 Fed.Appx. 353 (5th Cir. 2007), the Fifth Circuit stated:

> Two dueling principles govern our determination of whether . . . Preston exhausted her administrative remedies: (1) consistent with the remedial purposes underlying Title VII, we construe employment discrimination charges with the utmost liberality, bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading, and (2) the charge must contain an adequate factual basis so that it puts the employer on notice of the existence and nature of the charges and so the EEOC may have an opportunity to attempt to obtain voluntary compliance. Based on these principles, a Title VII suit may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.

Id. at 356-57 (quotation marks, brackets and footnotes omitted).

The EEOC charge was prepared about six weeks before Bennett's last day of work at Wal-Mart. Putting aside the time-barred October 2009 salary reduction, the focus of the EEOC charge is receipt of the "unfair" Coaching for Improvement. In this suit, Bennett contends that: (1) her requests for breaks were refused; (2) her requests for time to go the doctor were refused; (3) she was required to go to the doctor on her day off; and (4) although the doctor required her to wear a heart monitor, this created an issue for Wal-Mart when she returned to work. Rec. doc. 22 at 2-3. Her EEOC charge is required to be construed with utmost liberality. Even with such a

---

metro store with its lower pay scale. Undisputed Fact No. 2. The pay reduction occurred before the alleged unfair Coach for Improvement in April and August 2010. She did not suffer a demotion, reduction in pay or any change in working conditions as result of the Coach for Improvement. Undisputed Fact No. 6.

In a deferral state, such as Louisiana, an individual need not file a charge with the EEOC until thirty days after receiving notice that the state agency with authority to grant relief has terminated proceedings, or 300 days after the alleged unlawful employment action, whichever is earlier. Any claim for the pay reduction is time-barred because it occurred more than 300 days prior to the filing of the charge. Burrell v. Brown, 228 F.3d 410(5th Cir. 2000).

construction, the charge did not put the EEOC and Wal-Mart on notice of a failure to accommodate claim. Such a claim cannot be said to reasonably grow out of the charge. The charge did not include a claim concerning the heart monitor or other matters about which she now complains. She was required to wear the heart monitor in July 2010 or about two months before she completed the charge of discrimination on September 27, 2010.[7]

Bennett's ADA claim for failure to accommodate her reasonable work restrictions is outside the scope of her EEOC charge.

Second, assuming the ADA claim is within the scope of the EEOC charge or can reasonably be expected to grow out of it, defendants argue that all of Bennett's requests for accommodations were granted. Bennett's petition does not describe her requests for accommodations. Rec. doc. 1 (Attachment at para. 13). Bennett's opposition states that when she became ill, she required some breaks, a shorter work day for a period of time and the wearing of a heart monitor. She contends that none of these accommodations were reasonably provided. Rec. doc. 22 at 5.

The undisputed facts are:

> 33. The only allegation in plaintiff's Petition relating to disability discrimination is that defendants violated the ADA by failing to accommodate plaintiff's "reasonable work restrictions."
>
> 34. Plaintiff's "reasonable work restrictions" were wearing a heart monitor and working a six-hour shift on three occasions in July 2010, up to July 13, 2010, and being allowed to take vacation time, lunch breaks and other "time off" to take care of her health.
>
> 35. All of plaintiff's requests to wear the heart monitor and work six-hour shifts were granted, but on one of those three occasions in July 2010 plaintiff felt that her request was not granted because she claims that Mr. Nowell told her that she could not wear the monitor and she did not work the following day because she could not contact Mr. Nowell to determine if he would allow her to work with the

[7] Undisputed Fact No. 14 and Rec. doc. 18 (Exhibit P).

> monitor. Plaintiff was not coached nor did she suffer any pay loss for not working that day.
>
> 36. Prior to November 8, 2010, plaintiff's only other formal requests for accommodation, all of which were in writing, were for leaves of absence, all of which were granted.

Even if Bennett's ADA claim for failure to accommodate her reasonable work restrictions is within the scope of her EEOC charge, the undisputed facts demonstrate that Wal-Mart accommodated her work restrictions. It is not necessary to consider the remaining arguments. Defendants' motion for summary judgment as to the ADA claim is granted.

## SECTION 1981 CLAIM

Defendants contend that Bennett cannot establish the prima facie case required for Section 1981 claim for a hostile environment based on racial harassment. Bennett must establish that: (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment affected a term or condition of her employment; and (5) Wal-Mart knew or should have known about the harassment and failed to take prompt remedial action. Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).

Defendants argue that Bennett cannot establish that the alleged harassment affected a term or condition of her employment.

> Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Workplace conduct is not measured in isolation. In order to deem a work environment sufficiently hostile, all of the circumstances must be taken into consideration. This includes the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. To be actionable, the work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.

Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 651 (5th Cir. 2012) (citations and quotation marks omitted).

When Bennett moved to the LaPlace store, she accepted a reduction in pay because she moved from a metro store to a non-metro store.[8] The reduction in pay occurred before she encountered the alleged harassment at the LaPlace store. After she moved to the LaPlace store, it is undisputed that she did not suffer a demotion, reduction in pay or hours or any change in her working conditions.[9] When Bennett filed her EEOC charge on September 27, 2010, less than six weeks before her last day on the job at the LaPlace store, Bennett did not include any complaint based on race. Rec. doc. 18 (Exhibit P). On April 25, 2011, Bennett sought an extension of her leave until August 1, 2011. Her letter to Erica Bratton states:

> Erica I want you to know that I love my job. I also yearn and look forward to returning. But because of my current medical condition I am unable to return. Erica I appeal to you that you extend my sick leave until my return date of August 1, 2011. . . .

Rec. doc. 18 (Exhibit T).[10] Bennett cannot establish that the alleged harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Bennett cannot satisfy the fourth element required for a prima facie case for a Section 1981 claim.

Assuming that Bennett can demonstrate a prima facie case, defendants contend that Bennett's Section 1981 claim is barred by their affirmative defense based on Faragher-Ellerth.[11] Wal-Mart contends that the defense is established because it is undisputed that: (1) it exercised

---

[8] Undisputed Fact No. 2.

[9] Undisputed Fact No. 6.

[10] Erica Bratton is an African-America. She is the Market Human Resources Manager in Bentonville, Arkansas. Rec. doc. 22-8 (Exhibit-November 12, 2010 email from Bratton to Bennett). Bennett's leave of absence began on November 8, 2010. With extensions it continued until her resignation in November 2013. Undisputed Fact Nos. 15-20.

[11] Faragher v. City of Boca Raton, 524 U.S. 775, 807-808, 118 S.Ct. 2275 (1998); and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257 (1998).

reasonable care to prevent harassment by promulgating a strict anti-harassment policy; and (2) Bennett unreasonably failed to take advantage of the correctional opportunities provided to her by not reporting the alleged harassment to Wal-Mart. It is undisputed that Wal-Mart had the requisite policies.[12] Bennett does not challenge the existence or sufficiency of the Wal-Mart policies.

Instead, Bennett urges that she tried to avail herself of these policies but her requests were ignored. Rec doc. 22 at 5. She contends that: (1) she tried repeatedly to speak with and email Nowell and Bratton, the Human Resources Manager in Bentonville, but her requests were ignored; (2) she tried to request an Open Door on multiple occasions but the requests were ignored; (3) she attempted to use the Red Book regarding complaints but there was no response; (4) she traveled to Bentonville for help with her claims; and (5) she was told to file a workers compensation claim, which she did. Rec. doc. 22 at 4.

Wal-Mart demonstrates that prior to 2009 and her transfer to the LaPlace store, Bennett made an Open Door complaint to the Market Office when she believed that she was the victim of race discrimination at another store. There was a Redbook investigation of this complaint.[13] Bennett understood how to avail herself of the policies and procedures for reporting race discrimination.

Wal-Mart acknowledges that Bennett testified in her deposition that she tried to complain to Bratton about racial comments and harassment at the LaPlace store, but was unable to get through to her to actually communicate details of her complaints.[14] There is, however, no

[12] Undisputed Fact Nos. 7 and 8.
[13] Undisputed Fact No. 61.
[14] Undisputed Fact No. 62.

written evidence of any complaint that Bennett made to Bratton or anyone else at Wal-Mart concerning racial comments and harassment at the LaPlace store.[15] Wal-Mart states:

> Moreover, even if plaintiff complained to Mrs. Bratton about specific alleged acts of racial harassment and Ms. Bratton failed to respond, it is undisputed that plaintiff failed to put anything in writing, as she did with other workplace complaints.

Rec. doc. 18 at 22-23. Assuming that Bennett complained orally to Bratton and Bratton refused to respond, can defendants prevail on the Faragher-Ellerth affirmative defense if Bennett did not put her complaints in writing? Defendants have not cited any authority that imposes such a requirement on a claimant. Defendants cannot prevail on this defense on a motion for summary judgment.

Even though defendants cannot prevail on their Faragher-Ellerth affirmative defense on summary judgment, they are entitled to a dismissal of Bennett's Section 1981 claim because she cannot establish a prima facie case.

IT IS ORDERED that: (1) defendants' motion for summary judgment (Rec. doc. 18) is GRANTED; and (2) Bennett's claims against Wal-Mart and Nowell are dismissed with prejudice.

New Orleans, Louisiana, this 9th day of March, 2015.

**SALLY SHUSHAN**
**U.S. Magistrate Judge**

[15] Undisputed Fact No. 68.